All right, our next case is 5S23-0588. I'm going to say to Mark A. Weber. Party here ready? Come on up. Good morning, my name is Jim Martinkus and I represent the claimant, Jennifer Weber. As the mass exodus indicates, this case does not have the public interest that my case has, nor does it have the complication. This is a pretty straightforward case. You start off with the proposition that court orders are not mere suggestions or invitations for someone to follow. They're a clear requirement placed upon an individual, if you don't comply, there are consequences. And that's what we have here. We have a case, a divorce case, in which the trial judge ordered the decedent to keep in place a certain policy of life insurance in the amount of $400,000 with U.S. Financial as long as, or so long as, he has an obligation to pay maintenance. That was the directive he had. His obligation to pay maintenance was never modified by court order, never terminated by court order. He never filed anything at all to try to, in any fashion, change it. His obligation continued until the absolute moment of his death. If, in fact, he had complied with the court order, at the moment of his death, the policy would have vested, and my client wouldn't be out $400,000. Let me stop you there for a moment. With regard to the court order requiring him to keep life insurance and have her, it did not say that it, correct me if I'm wrong, my reading was that it did not say specifically that she would be the sole beneficiary under that term, that he could have other main beneficiaries along with her. Is that correct? It is correct that it didn't specifically say that, but I think any reasonable inference in the context of how Judge Wall structured her order, clearly it was meant to continue to have a benefit to her. He got all the business property, he got all the income from that, and that's what Judge Wall, I think, ruled. But the order was, or the requirement for the life insurance to be kept was as security for his maintenance obligation. And so if I add one and one and try to come to two, if at the end of his life, let's say he were to die, and he was current at that time on his maintenance, then isn't it arguable then that she would not be entitled to any portion of that $400,000 if there had been other main beneficiaries? I don't think so. And the reason I say this, let's look at that from a pragmatic position. He doesn't make his payments, he's alive. She goes in and files a contempt. She can't utilize the security, he's alive. There's no possible way that security obligation enhances her ability to collect. And similarly, this gentleman let this lapse five years earlier. So once it lapses, it's just by pure chance that he did not have an arrearage at that time. If the order was to use this as security, the security was gone five years earlier. So it makes no sense to me that that could have been the possible purpose of this. Well, let's look at it from another perspective with regard to him letting it lapse. You say it's just by chance he didn't have an arrearage owed at the time of his death. And it could also be looked at as it was by his efforts. There was no arrearage. He was responsible in his maintenance obligation. And so knowing, presuming that he knew he would continue to be responsible for the maintenance obligation during his lifetime, is it possible that his understanding of the reason for that maintenance or for that life insurance policy, he could have assumed, okay, I'm going to continue making these payments. There's no reason to think I wouldn't otherwise. And so there won't be any need for that? It's possible, but again, I don't think his individual intent. I don't think his individual thought on that changes the fact that he had a direct order. And I do think that it's really important to look at the legislative history and the changes. If you look at the language of Judge Wall's order, there's nothing to suggest that it was security for the current maintenance. It was clearly in place to provide her benefit for the unfulfilled life insurance payments that she would have received had he lived. If you look at the order, it's clear to me that it doesn't in any fashion relate to this possibility of security for past payments. But I think it's important that you look at the statutes, 504A, F rather, of the Illinois Marriage and Dissolution of Marriage Act. So the judge may, in fact, secure life insurance by having a security of life insurance in the payer's life. And then if you look at 510C, this is, I think, language that the estate has not been able to circumvent. Any termination of an obligation for maintenance as a result of the death of the obligor, however, shall be applicable to any right of the other party or such other party's designee to receive a death benefit under such insurance on the obligor's life. So it clearly says whether or not the maintenance obligation terminates. There's no termination of the right to receive the benefit. Then I think the most important for me is, if you look at the Committee Comments to Rule 504, it says, by amendment effective January 1, 2016, language providing that the maintenance termination events of the right to a termination of an attendant security obligation was deleted. And it goes on, the death of the payer, of course, would trigger the payment of a life insurance death benefit to the payee. So now you've got clear directive and legislative authority for a judge to do, in fact, what she did, place an order on him to maintain his life insurance. He failed to do it. These statutory committee comments to me make it clear that they're independent, that a judge can, in fact, and does all the time. In my practice, that happens often, where we know that there may be a limitation upon death, but we want to secure that so the spouse who didn't receive any of the businesses has this life insurance benefit to protect her for his early death. And this is a case, too, where he didn't do anything for five years. He has a premium waiver policy. He pays over $1,000 over the life, I think, of this policy. He doesn't do anything. He doesn't go and try to say, hey, look, I'm sick. I don't think I can make this payment anymore. I paid all this money to have this waiver. Nothing. He doesn't do a thing. He doesn't go to court. Doesn't he continue to pay the maintenance? He does. But his obligation was up to date. Yes. If you decide that the only thing that that order did was to make certain that he, in fact, paid the maintenance, then the question is how would that security really do that? Like I mentioned earlier, it has no effect. You can't do anything while he's alive. And when he's died, the policy lapsed five years ago. It's pure fortuitousness. So why would a court say, well, you can go ahead and disagree with my order. Don't follow it. And if it just happens that you're current, then no big deal. I don't think that's the case at all. This is the case where it's clear to me, at least, that this was an order of the court to provide a benefit to my client, the ex-wife of the decedent, in the event of his premature death. Isn't it possible that the court could have, at the time of the divorce, awarded her the life insurance policy as property that would be hers upon his death, as opposed to structuring it as security for maintenance? I don't think so, only because it's a term policy. Unlike the whole life or ordinary life policy where there's an actual cash benefit, there's nothing to award. It's the opportunity to have a death benefit paid. I don't think that's property. I think that's a condition of maintenance and a condition that a court imposed upon this individual, but we've ignored it. I mean, I understand your questions, Your Honor, I do, but I just don't believe when you look at her order. It doesn't say anything about we're just going to have this secure his current obligation. It is very, very clear that she will, Judge Wall, order him so long as you have an obligation to pay maintenance. To me, that's a clear indication she would know that unless something takes effect, that policy is in effect. She gets the benefit, so she can live her life, notwithstanding his death. And I think the issue is- Yeah, but maintenance stops at his death. Yes, absolutely. So any right for her to continue benefiting, to receive a financial benefit from the divorce stops when he dies, regardless if he has life insurance or not. So I don't know that that argument resonates with me in terms of being able to suggest that it's to continue for her to continue to be able to live after he's dead. Well, again, I think that I understand what you're suggesting, Your Honor, but I think that the committee comments make it really clear that it doesn't- It triggers when you die and you have this policy. It triggers the payment. What else could that mean? Otherwise, then why do we even talk about securing a life insurance benefit? But the life insurance policy in existence prior to the divorce. Yes, it was for many years. So it's your argument that it was part of the property settlement? No, only because I don't think it's property in that context. I don't think it has an actual present value. It simply is a term policy. So unlike a policy that has cash value, I can go and get my cash out of it any time and cancel it, take it. I don't think that really is property. This is incidental to the maintenance award. It was used clearly by the judge to provide her benefit upon his death. So it's your argument that it's not for the purpose of security of the maintenance? That's correct, because you couldn't really use it in that fashion. It was a benefit that she was awarded by the court to secure the future payments that he would no longer make upon his death. That's the reason that happens all the time in my practice where judges will make a decision to secure this payment because they look at this long-term and they see that he has an obligation. And this is especially true when he got the business. The only income-producing property that was there was this business that they had and had a stream of income item for item until he sold it or something along those lines. That was the structure of this thing. She did it specifically. He has the income. He can pay the maintenance obligation. If that income stream is gone because you die and then your estate has it, you have to keep this obligation of life insurance in place. So that's my argument. What kind of business did he have? Judge, it was a fireplace and accoutrements and all kinds of things of that nature. So it was a retail shop in a small town, but it was a very thriving, active business. He had a great business, and the judge gave him the whole business along with the income stream. I tried the case at the trial level, so I'm a little more familiar with how some of that stuff worked. But in terms of where we are today, it really is if you decide that— What year was the divorce? The divorce itself was in 2011, I believe. That's when, I believe, something along those lines. The order, yes, because the supplemental order was September 27, 2011. I think the initial order was in June, so a few months earlier. So, yes, it was in place in 2011. In 2015, he stops making payments, does nothing. He doesn't seek the waiver. He doesn't— How do you feel about him stopping the divorce? Well, there's some discussion about that. Keep in mind this is a motion for summary judgment. This wasn't something flushed out. Was there an affidavit about it? Judge, if I remember, there was some suggestion that the daughter talked to her about the event, like, two or three years afterwards. I think 2015, if I recall, is when he stopped payment. The daughter suggested there was some conversation with Mom in 2018. So there was, at least at some point. But, again, her obligation wasn't to go ahead and have him do anything. He had the obligation. He had the obligation to go to court to try to, in fact, find out whether or not he can get it terminated or modified. She did nothing to stop him from doing these things. He could have— Again, the waiver is also a real question for me why he wouldn't have done that instead of simply gotten rid of the obligation unilaterally. The other thing I would suggest to the court is a horrible example, if you allow someone as a precedent to simply ignore court orders. That concerns me a lot, that you can simply ignore a court order and there's no consequence. Hey, man, you paid your maintenance, so you're lucky. No consequence at all, even though your ex-wife doesn't get the $400,000 she would have received had you continued to make the payment, had you maybe gone to seek a waiver of the premium. So that's my position. Any questions? One last thought. Assuming that he had not made the payments, the maintenance payments at some point. He quit making them, say, at the same time he quit paying for the life insurance. Well, that's better. Quits making the maintenance payments. Life insurance is still in place. Doesn't that make him, to her at least, much more valuable dead than alive? Bad public policy in that regard, isn't it? Well, I guess, but I don't think that's how that's structured. That's a really interesting question, but I wouldn't view it quite like that. I think that, again, this isn't a difficult case. He had an obligation. The judge told him to do this. He didn't do it. And then he says, well, so sad, too bad, you lose $400,000. I don't want to oversimplify it, but in many ways, unlike the previous case, this is one little issue, and how you see it is how you see it. But thank you. Okay, thank you. You have time to reply. Good morning, Your Honor. May it please the Court. Mr. Mark Tekas. My name is Steve Beckett. I represent Jessica Weber, who is the executive of Mark Weber's estate and obviously serves for the benefit of her sisters, Cassandra and Mallory. I think we need to give Judge Wall a break here. She did a letter of order on August 18th, 2011, and at that time there was no provision in the statute regarding the allocation of life insurance benefits. It came in and was effective January 1st of 2016. Originally it was called B-5, and then in 2016, as counsel noted, the whole thing got restructured and it became F. And so we're arguing about something that the judge should have done when the law wasn't even in existence at the time. So we need to give her a break because she did what she thought was the right thing to do. Counsel suggests, well, she gave him the business. Well, what she did, if you read the entire order, was a very careful examination of the business, of the value of the business, of all of the party's assets, and then she ordered Mark to pay $66,870.42 within 30 days of the entry of the judgment order to equalize the property. And she never said a word about that life insurance policy and the property portion of the judgment. We need to recognize that because the only place that the life insurance is going to come into any meaningful effect is to secure maintenance. And as you've pointed out, Mark made every maintenance payment. Even on his deathbed, if you look in the record, you will see that on May 31st of 2021, Mallory Weber wrote the last check for maintenance to Jennifer, her father's ex-wife, to make sure that the maintenance obligation was paid up to the time of his death, and then he died just a week or so later, June 12th, 2021. Counsel, the trial court awarded her permanent maintenance, correct? Correct. All right. The day after the final judgment was signed, he could have dropped dead, right? Correct. So then why, isn't that the sole purpose of the insurance? Well, that's correct, but then if in fact she intended that Jennifer was to receive $400,000, she would have said so in the judgment. Who in the world else should receive it? The kids. The other beneficiaries of the policy. He's got three kids. Well, then why make him take out a policy for them? They wanted the divorce. They had nothing to do with the divorce. Okay, well, you know, we've invented something new in this case. Contempt after death. That's what counsel is arguing. Because there was a time during this period that he was not in full adherence with the court order. He should have been found in contempt. Well, you know, as trial judges, that's not accurate. It has to be willful. Why did he stop making the payment? It wasn't some large. The insurance benefit wasn't supposed to be some sort of sanction. It was to give her the permanent maintenance she was awarded. Right. And now by your questions, you have identified another concept, which is maintenance in gross after death. That Judge Wall said nothing about in her order. That's what we're doing. We're interpreting the judge's order and what the judge's intent was in addressing this. And the judge addressed it as security. Security for maintenance. And as the lower judge, Judge Burton, found, if, in fact, the maintenance payments were all made, then the fact that the policy wasn't in existence at the time of his death is of no consequence to Jennifer, unless the judge intended that $400,000 somehow. And, by the way, the record is absolutely unclear on that point about who's supposed to get what. That $400,000 was some species of property or permanent maintenance for her. It doesn't say that, Judge. It does not say that it's for that purpose. Counsel argued in the reply brief for the first time this concept of, well, what he should have done was apply for a waiver of premium. So we're going to second-guess him after death and say it's his fault. Counsel's not correct. It's uncontradicted in the record that in October of 2018, Jennifer had a conversation with Mallory in which she told Mallory, I know that the policy has lapsed. And so instead of doing something about it right then, to counsel's suggestion, a contempt action so that he could do something about it. He could have purged himself of contempt. She could have created some other, or a judge could have created some other method of security to assure that the maintenance payments were going to be made or required him to take the amount of money that he was paying in premiums and see if he could get some other term policy. The problem is he's uninsurable at that time because of health reasons. And so what we're doing is doing some really shrewd things that he should have done to make sure there's $400,000, which frankly is a windfall to Jennifer because she wasn't entitled to it. The maintenance obligation terminated after death. And if you look at it, Jennifer got everything that Judge Wall ordered she was to receive under that judgment. Except permanent maintenance. She got permanent maintenance. She got permanent maintenance that the law allowed her to have all the way up to the time of the payor's death. And the statute is clear. The obligor's death terminates maintenance. Permanent maintenance doesn't mean for the rest of your life if the obligor dies because if Judge Wall had meant that, she would have said $400,000 of benefits in that life insurance policy shall be payable on death, on Mark's death. She didn't say that. This new statute would have allowed her to do that. The one that came into effect after her judgment. Didn't it just codify her intent? How can it codify her intent when she hasn't said that? We have to look at the whole judgment, don't we? Well, didn't it codify all judges' intent when they order someone to take out insurance to secure a maintenance obligation? With all due respect, if Judge Wall meant that, she would have said she was to be the beneficiary, not a beneficiary, the beneficiary under that life insurance policy. And Judge Wall didn't say that. So it's your argument essentially that if the policy would have been in effect at the time of his death, then they would have made a determination of if there was an arrearage owed at that time on maintenance, and let's say there was one payment owed, they would have taken of that $400,000 of death benefits, they would have taken $3,325 and paid her for that one month's arrearage. That's correct. And the rest would have been distributed to the three daughters. That's correct. So the only people that would have benefited at this point had the policy been in effect, since there was no arrearage, would have been the three daughters. That's correct. That's what this slide is about right now. Did the three daughters get their father's estate, or did they not? That's really the consequence here. If you have no other questions. Thank you. Thank you. It's very important that you look at the order, what it says. The obligation to pay maintenance shall be secured by the U.S. financial term life insurance policy with the face value of $400,000 currently in place, which lists the wife as a beneficiary. There's no implication here that somehow he could change the beneficiaries, he could add the kids to the beneficiaries. It was very clear that this, in fact, is a policy for her as the beneficiary. But isn't it, say, what you just read said, which lists her as a beneficiary, not the beneficiary? Well, it does, but I think in the context of here, this is the only beneficiary listed as of the time this order is imposed. I don't think he then could go on his own and utilitarily change it. Do we know if at that time the policy listed her solely as the beneficiary, or is it in the record showing that it? That's a good question. I don't remember that. I'll be honest with you on that one. I want to make sure that you understand, too, the property argument he makes. Let me ask a further one. Sure, sure. I apologize if I don't. It's okay. It'll be gone out of my head. It states, as you just read, that it lists the policy as her being a beneficiary. If, in fact, the policy has the three children listed at the same time as that order was written, are you suggesting that the judge's intent was to divest them from any interest in that, the three children, and that it would all go to her? I believe at the time of this presentation that the intent here was that the court would have her as the beneficiary, period. I don't remember. It's been a long time, Judge. I can't sit here and tell you that I remember that exactly. But my recollection is that this was for specifically her as the beneficiary of this policy. Let me ask one other question. With regard to the three girls, are they all children of both the wife and the husband? Yes, yes. And just a couple of other things here. The committee comments, in my opinion, was to clarify what fact the statute meant. It wasn't new legislation. It was to clarify. Because there were some of these arguments being made in various courts, but I believe that the vast majority of courts have looked at this sort of a situation and clearly said that you can, in fact, provide on a permanent basis for maintenance if there's a death. That's why I have the policy. It's not to secure the payments. That makes no sense. The comments that you're referring to when the statute was amended, is that retroactive? I don't think there's anything here that talks about retroactivity. It seemed to me that, well, in fact, here this is simply a clarification of the existing policy. It doesn't create new law. It simply is the committee's view on how we should look at this. And it's clear from their view that, in fact, you have the right to get the policy proceeds. It triggers it. The death triggers it. So, to me, the comments certainly elicited the interpretation of that section of the policy. Thank you very much. Thank you. Thank you, Your Honor. The court will take the matter into consideration and issue its ruling in due course.